UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN DUNN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>TEACHERS INSURANCE & ANNUITY ASSOCIATION OF AMERICA, et al.,<br><br>　　　　Defendants. | Case No. 13-cv-05456-HSG<br><br>**ORDER DENYING SETTLEMENT APPROVAL AND DENYING MOTION FOR ATTORNEYS' FEES; SETTING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 157 & 166 |

　　　　Before the Court is the renewed joint motion for approval of settlement filed by Plaintiffs Kathleen Dunn, Patrick Campbell, Karen Hobson, and Frederick Hickson ("Plaintiffs"). Dkt. No. 157 ("Mot.") and Defendants Teachers Insurance & Annuity Association of America's ("TIAA") and Pride Technologies, LLC ("Pride"). The proposed settlement agreement resolves Plaintiffs' overtime claims under the federal Fair Labor Standards Act ("FLSA") and other wage-and-hour claims under California law against TIAA and Pride. *See* Dkt. No. 102. Defendant Experis US, Inc. ("Experis"), which does not join the settlement, has filed an opposition challenging its terms. Dkt. No. 161 ("Opp."). Plaintiffs have replied, Dkt. No. 163 ("Reply"), and they also submitted a supplemental brief in support of the settlement agreement, Dkt. No. 164 ("Supp. Brief").

　　　　Additionally, Plaintiffs filed a motion for attorneys' fees and costs. Dkt. No. 166 ("Fees Mot."). TIAA opposes Plaintiffs' motion for fees and costs to the limited extent that it could be read to seek to recoup costs outside of the settlement agreement. Dkt. No. 167 ("Fees Resp.").

　　　　The Court has carefully considered the parties' arguments on each motion, both in their written submissions and at oral argument. For the reasons set forth below, the Court **DENIES** the settling parties' approval motion and **DENIES** Plaintiffs' attorneys' fees motion. The Court sets a further case management conference for February 2, 2016, at 2:00pm, to discuss scheduling.

**I.      BACKGROUND**

Plaintiffs Kathleen Dunn and Patrick Campbell filed this putative class and representative action against Defendants TIAA, Pride, and Experis, alleging a variety of wage-and-hour claims under federal and state law. These claims, to which Plaintiffs Karen Hobson and Frederick Hickson were later joined by amendment, include: (1) failure to pay overtime wages under FLSA and Cal. Labor Code §§ 510, 1194, and 1198; (2) failure to pay minimum wage under Cal. Labor Code §§ 510, 1194, and 1198; (3) failure to provide meal and rest periods under Cal. Labor Code §§ 226.7 and 512; (4) failure to pay all wages upon termination under Cal. Labor Code § 203; and (5) unfair competition under Cal. Bus. & Prof. Code §§ 17200, *et seq.*[1] Notably, before filing this action, each of the four Plaintiffs received cash payments from Defendants in response to their pre-litigation assertion of claims for unpaid overtime. Mot. at 4. Plaintiffs still filed their overtime claims, a fact that is addressed below. *See id.* at 5 & n.4.

Without moving for certification of a class or collective action, Plaintiffs then entered into settlement negotiations with Defendants. *See* Dkt. No. 123. A global settlement agreement was drafted and the parties made representations to the Court that a motion to approve the settlement would soon be filed. *E.g.*, Dkt. Nos. 123 & 126. But, for whatever reason, Experis ultimately refused to execute the global settlement agreement. Dkt. No. 143 at 3. Plaintiffs, TIAA, and Pride jointly moved the Court for approval of the partially-unexecuted agreement anyway. Dkt. Nos. 143 & 148.

In that motion, the settling parties initially neglected to inform the Court that Plaintiffs had

---

[1] While the Court granted in part and denied in part Plaintiffs' motion for leave to file a third amended complaint, Plaintiffs never separately filed their proposed amended pleading. *See* Dkt. Nos. 91 & 102. For the purposes of this motion, the Court takes the exhibit to Plaintiffs' motion for leave to file as the operative complaint in this matter, *see* Dkt. No. 91-1, as read in light of the Court's order on that motion, *see* Dkt. No. 102 (granting leave to file third amended complaint to expand FLSA claims to nationwide putative class and to add Plaintiffs Hickson and Hobson, but denying leave to add New York putative class). But Plaintiffs must file their amended pleading as a separate docket entry within five days of this Order and before taking any other action in this matter. Plaintiffs' amended pleading may only remove allegations regarding the rejected New York putative class. The Court takes the parties' assertion in their joint moving papers that "Dunn and Campbell are the only named plaintiffs in this action," Mot. at 3, n.1, as a mistake of counsel and not a disavowal of the third amended complaint, which added Hickson and Hobson, as approved. To the extent that Plaintiffs Hickson and Hobson in fact no longer wish to be named plaintiffs in this case, they will have to seek dismissal under Federal Rule of Civil Procedure 41.

2

already received a total of $271,005.90 based on their FLSA overtime claims before filing suit. *See* Dkt. No. 146 at 6. This fact came out only when TIAA replied to Experis's opposition to the global settlement agreement. *Id*. There, TIAA revealed that Plaintiff Dunn had already received $50,000, Plaintiff Campbell had received $64,687.50, Plaintiff Hickson had received $120,960.00, and Plaintiff Dunn had received $35,358.40. *Id.* Despite those substantial payments, TIAA and Pride sought to allocate another $240,000 to Plaintiffs to resolve their claims. *Id.* at 2. To that effect, TIAA asserted that "even if TIAA is the only settling Defendant, Plaintiffs will receive [] more than 55% of what Plaintiffs claimed their individual overtime claims were worth when the previous payment was determined." *Id.* TIAA continued that, "[g]iven the prior payments, this settlement is certainly well within the broad parameters of the ballpark within which settlements will be deemed to be in good faith." *Id.* (internal quotation and citation omitted). There was no explanation as to why TIAA and Pride would agree to seemingly overcompensate Plaintiffs.

After briefing and a hearing, the Court refused to approve the joint settlement agreement, without prejudice to the settling parties refiling a new settlement agreement that excluded Experis. Dkt. No. 155. In that order, the Court also instructed that Plaintiffs, TIAA, and Pride would need to avoid "*pro forma* assertions" about the "fairness of the proposed amounts to be paid to each settling plaintiff (in light of plaintiffs' apparent intention to abandon the class claims)." *Id.* at 1-2. Instead, the settling parties would need to provide additional information that would "allow [the Court] to determine whether the settlement agreements are 'fair and reasonable' resolutions of '*bona fide*' disputes." *Id.* at 1-2 (emphasis original; internal citation omitted). Specifically, the Court directed the settling parties to explain why Plaintiffs were receiving potentially duplicative recoveries for their overtime claims and how those amounts were calculated. *Id.* at 2. The Court also asked for information about why Plaintiffs' counsel had concluded that settlement without moving for class certification was appropriate given the admittedly minimal discovery done in the case. *Id.* The purpose of these requests was to determine whether steps were needed to protect putative class members. To that effect, the Court warned that putative class notice might be necessary. *Id.* at 1.

The settling parties then filed the instant renewed motion for joint settlement approval.

3

They attach revised settlement agreements, countersigned by each Plaintiff, Plaintiffs' counsel, TIAA, and Pride, that excise Experis's previously stated contribution. Experis nonetheless filed an opposition, requesting that the Court deny the settlement because it would bar any contribution action it later filed against TIAA and Pride. *Id.* After the Court held a hearing on the motion for settlement approval, Plaintiffs filed a motion for mandatory, reasonable attorneys' fees and costs under the FLSA. TIAA submitted a limited response to the fees motion, arguing that any fees and costs award would have to be paid from the agreed-upon settlement fund. Fees Resp. at 1-2.

## II.  LEGAL STANDARD

### A.  Settlement Approval of Individual FLSA Claims

FLSA requires employers to pay their employees time and one-half for work exceeding forty hours per week. *See* 29 U.S.C. § 207(a)(1). Most courts hold that an employee's overtime claim under FLSA is non-waivable and, therefore, cannot be settled without supervision of either the Secretary of Labor or a district court. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982); *Till v. Saks Inc.*, No. C 12-03903, 2014 WL 1230604, at *2 (N.D. Cal. Mar. 14, 2014); *see also Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2014 WL 1477630, at *3 & n.5 (N.D. Cal. Apr. 15, 2014) ("*Otey I*") (collecting cases applying *Lynn's Food Stores*).

"The Ninth Circuit has not established the criteria that a district court must consider in determining whether an FLSA settlement warrants approval." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) ("*Otey II*"). For that reason, courts in this district apply the Eleventh Circuit's widely-followed standard set forth in *Lynn's Food Stores* and consider whether the proposed settlement constitutes "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* (quoting 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . that are actually in dispute," the district court may approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354.

### B.  Settlement Approval of FLSA and State-Law Class Claims

Federal Rule of Civil Procedure Rule 23(e) requires the Court to review and approve a proposed voluntary dismissal, settlement, or other compromise of a certified class's claims. The Ninth Circuit has held that Rule 23(e) also applies to settlements before certification, but in a

4

much lighter form that does not entail "the kind of substantive oversight required when reviewing a settlement binding upon the class." *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989). Although there has been "some uncertainty" about whether this holding applies in the wake of the 2003 amendments to Rule 23(e), *see, e.g.*, *Lyons v. Bank of Am., NA*, No. C 11–1232, 2012 WL 5940846, at *1 & n.1 (N.D. Cal. Nov. 27, 2012), courts in this district continue to follow *Diaz* to evaluate the proposed settlement and dismissal of putative class claims, *see, e.g.*, *Tombline v. Wells Fargo, NA*, No. 13-cv-04567, 2014 WL 5140048, at *2 (N.D. Cal. Oct. 10, 2014). *See also Luo v. Zynga Inc.*, No. 13-cv-00186, 2014 WL 457742, at **3-4 (N.D. Cal. Jan. 31, 2014) (applying *Diaz* to proposed settlement of putative class claims under FLSA and state law). Because that approval standard "strikes the right balance between the full-bore fairness review for settlement of certified class claims, and doing nothing at all to ensure that putative class members are protected from collusive deals and not sacrificed for convenience when named representatives decide to settle their claims individually," *Tombline*, 2014 WL 5140048, at *2, the Court applies *Diaz* to determine whether settlement and dismissal are appropriate in this case.

Under *Diaz*, the Court must assess potential prejudice to the putative class members from: (1) "possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances"; (2) "lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations"; and (3) "any settlement or concession of class interests made by the class representative or counsel in order to further their own interests." 876 F.2d at 1408. "The central purpose of this inquiry is to 'determine whether the proposed settlement and dismissal are tainted by collusion or will prejudice putative members.'" *Tombline*, 2014 WL 5140048, at *2 (internal citations and quotations omitted). If, after considering these factors, a district court concludes that there is a risk of prejudicial or unfair impacts from the pre-certification settlement of putative class claims, *Diaz* also held that district courts may require notice to putative class members. *Id.* (citing 876 F.2d at 1408-11).

C.   **Mandatory Attorneys' Fees under FLSA**

The FLSA contains a mandatory fee- and cost-shifting provision. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

5

allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action"); *accord Dent v. Cox Comms. Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007). Because settlement of a FLSA claim results in a stipulated judgment (at least when in district court), *Lynn's Food Stores*, 679 F.2d at 1354, this provision applies even where parties settle an individual action, *Yue Zhou v. Wang's Restaurant*, No. C 05-0279, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007).

## III. DISCUSSION

The Court first considers whether the proposed joint settlement agreements regarding Plaintiffs' FLSA claims are fair and reasonable to Plaintiffs on an individual basis. While the Court finds that the amounts of the monetary awards are more than adequate to satisfy Plaintiffs' individual FLSA claims, the scope of the negotiated releases is grossly overbroad and improper. For that reason, the settlement agreements are rejected. Anticipating the possibility that the settling parties will amend the settlement agreements and again move for court approval, the Court continues its analysis to consider whether the proposed settlements, even without the flaws just mentioned, would prejudice putative class members whose claims Plaintiffs are apparently abandoning. The Court finds that there are serious potential risks of prejudice that would require putative class notice before it approved the settlement agreements. To the extent that the settling parties again move for settlement approval, they must include a stipulation and proposed order regarding putative class notice. Finally, because the Court does not approve the proposed joint settlement agreements, Plaintiffs' attorneys' fees motion under the FLSA is denied in full.

### A. Renewed Motion for Approval of Joint Settlement

#### 1. Individual FLSA Settlements

The Court finds that the proposed settlements are not "a fair and reasonable resolution" of Plaintiffs' individual FLSA claims. *See Lynn's Food Stores*, 679 F.2d at 1354. In a supplemental brief, which the Court considers even though it was filed without leave, Plaintiffs provide the following information about their unpaid overtime, previous payments, and current payments:

| Plaintiff | Unpaid Overtime | Previous Payment | Current Payment | Total Payment |
|---|---|---|---|---|
| Dunn | $90,600.00 | $50,000.00 | $44,279.48 | $94,279.48 |
| Campbell | $75,000.00 | $64,687.50[2] | $57,286.57 | $121,974.07 |
| Hickson | $120,960.00 | $120,960.00 | $107,120.91 | $228,080.91 |
| Hobson | $35,358.40 | $35,358.40 | $31,313.04 | $66,671.44 |

Supp. Brief at 3. The factual bases for the unpaid overtime amounts are exhibits, introduced without any supporting declaration of counsel, that Plaintiffs' counsel claims represent Plaintiffs' calculations of the unpaid overtime hours that they worked, multiplied by their hourly wage and then by 1.5 to account for the FLSA overtime rate. Among other issues, three of the exhibits are undated, unsigned, and unverified. These defects diminish the weight the Court gives to these submissions for the purpose of determining the fairness and reasonableness of the payments.[3]

Assuming the unpaid overtime amounts are accurate, three of the four plaintiffs would receive a total monetary settlement, including the previous settlement payments and subtracting attorneys' fees, greatly exceeding their alleged unpaid overtime wages.[4] Plaintiff Hickson would receive an additional $89,267.43 (about 174% wages), Plaintiff Campbell would receive an additional $47,738.81 (about 150% wages), and Plaintiff Hobson would receive an additional $26,094.20 (about 174% wages). And Plaintiff Dunn would receive about 96% of her alleged unpaid overtime wages. Those amounts would be more than sufficient to resolve Plaintiffs' individual claims. *See Duran v. Hershey Co.*, No. 14-cv-01184, 2015 WL 4999511, at *1 (N.D.

---

[2] At the hearing, Plaintiffs' counsel claimed that only $56,250 of this amount was for overtime wages, while the rest was for the lost "time value of money."
[3] Plaintiff Dunn's exhibit is undated, unsigned, and unverified; one of Plaintiff Campbell's exhibits refers to a company called "Tapfin" and the other is undated, unsigned, and unverified; and Plaintiff Hickson's exhibit is undated, unsigned, and unverified. *See* Supp. Brief, Exs. A-D. Because the proposed settlements are rejected on a different basis, the Court will assume for now that the claimed amounts are accurate. But in any renewed motion for settlement approval, the settling parties must lay the proper foundation for their overtime calculations.
[4] The parties initially represented that each current payment was increased by an "additional 20% for attorneys' fees." Mot. at 5. Plaintiffs then claimed in their supplemental brief that counsel is actually entitled to 35% under a pre-existing contingency fee agreement. Supp. Brief at 5. The Court bases its calculations on the originally-stated 20% figure, but the broader principle holds whichever percentage is applied.

Cal. Aug. 18, 2015) (FLSA settlement approval is warranted with respect to monetary payments where they are "substantial, relative to [the plaintiffs'] claimed damages").

The scope of the negotiated releases, however, is grossly overbroad and improper. Each Plaintiff's individual settlement agreement purports to release TIAA and Pride (and related entities and agents) from "all claims asserted in the Action and any and all claims . . . arising out of or in any way connected with, directly or indirectly, *any* act, omission or state of events that has occurred during the Released Period." *E.g.,* Dkt. No. 157-2 ¶ 5(a) (emphasis added). The Released Period is defined as "the period *from the start of time* to the date that this Settlement Agreement is fully executed by the Parties." *Id.* ¶ 1(h) (emphasis added). This release is as broad as theoretically possible, and is not fairly or reasonably tethered to the consideration Plaintiffs are receiving based on their FLSA claims.[5] Courts in this district routinely reject FLSA settlements when the scope of the release goes beyond the overtime claims asserted in the complaint. *See, e.g.*, *Daniels v. Aeropostale W., Inc.*, No. C 12-05755, 2014 WL 2215708, at \*\* 4-5 and \*7 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement for releasing claims beyond FLSA overtime claims; "no opt-in member should be giving a general release (and should only be giving a specific release limited to the FLSA claim)"); *Otey I*, 2014 WL 1477630, at \*\*6-7 (rejecting proposed FLSA settlement that required representative plaintiffs to release claims based on "all matters in law, in equity, in contract, or in tort, or pursuant to statute"; "[t]he unlimited scope of the release provision is 'improper'") (citation omitted); *Tijero v. Aaron Bros., Inc.*, No. C 10-01089, 2013 WL 60464, at \*9 (N.D. Cal. Jan. 2, 2013) (rejecting proposed FLSA settlement requiring release of "any and all claims . . . arising out of or in any way relating to . . . employment with and/or termination of employment with Defendant" as "grossly overbroad and improper"). The Court finds the settlement agreements plainly unfair and unreasonable, and denies the motion for approval.[6]

---

[5] The proposed settlement agreements even include a waiver provision regarding claims that may arise in the *future* in the event that Plaintiffs seek employment or re-employment with TIAA or Pride (or related entities). *E.g.,* Dkt. No. 157-2 at 4-5. The Court finds the scope of this waiver, which would bar, for example, suits for discriminatory hiring conduct entirely unrelated to the claims being settled, unreasonably broad on its face as well.

[6] The Court does not accord any weight to Experis's argument that California Civil Code § 877.6

2. <u>Plaintiffs' Abandonment of FLSA and State-Law Class Claims</u>

Having rejected the proposed settlement agreements for the reasons stated above, the Court proceeds to provide guidance in the event the parties choose to correct the flawed releases and resubmit revised agreements for approval. The key fact underlying this discussion is the decision by Plaintiffs and their counsel to seek to abandon their class claims against TIAA and Pride.

The settling parties' previous settlement approval motion was denied not only because they were attempting to force a partially-unexecuted global settlement on Experis over its express objections. The Court also withheld approval because TIAA and Pride's substantial, additional payments to Plaintiffs to resolve overtime claims, for which Plaintiffs had already been paid, raised serious concerns regarding potential collusion. A defendant does not normally pay a 55% premium on its actual damages exposure, as TIAA previously proffered as a reason to approve settlement of Plaintiffs' FLSA claims against it, even where additional liquidated damages may be available under the FLSA. *See* Dkt. No. 146 at 6. For that reason, the Court made clear that future settlement approval *without notice to the putative class* was conditioned on the settling parties showing that their proposed agreement was not "tainted by collusion" and would not "prejudice putative class members[.]" *Id.* at 1.

The settling parties' renewed motion fails to allay the Court's concerns. Applying the factors set forth in *Diaz*, the Court concludes that the settlement agreements present a risk of prejudice to absent class members that would require putative class notice. The first factor is putative class members' "possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances[.]" 876 F.2d at 1408. The parties have not submitted any evidence as to whether there has been any publicity or other circumstances that

---

serves as an independent basis for rejecting the proposed settlements. Section 877.6 can operate to bar future equitable contribution actions filed by non-settling joint tortfeasors against settling joint tortfeasors where a court expressly finds that the settlement was made in good faith. But Experis cites no authority establishing that § 877.6 applies in federal cases involving FLSA settlements. Even assuming *arguendo* that the provision applies here, no party in this case has made a proper application as required by the statute. *See* Cal. Civ. Code § 877.6(a)(1) (application process). Accordingly, for at least these reasons, the Court has not been called upon to make a finding that the settling parties have (or have not) acted in good faith in connection with the proposed settlements.

9

would make putative class members likely to know about this case.[7]  Accordingly, the first factor is neutral with regard to whether the Court would order future putative class notice as to both the FLSA and state-law wage-and-hour causes of action.

The second factor is whether there is "lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations[.]"  *Id.*  Here, the Court must separately consider FLSA claims and the state-law causes of action.  The limitations period for FLSA claims is either two or three years depending on the willfulness of the violation.  29 U.S.C. § 255(a).  In this case, Plaintiffs' proposed nationwide FLSA class encompasses both willful and non-willful violations.  *See* Compl. ¶¶ 168-69.  Because the FLSA statute expressly precludes the equitable tolling of putative class members' claims until they opt into the action, 29 U.S.C. § 256(b), the clock is still running on those claims.  For that reason, all putative FLSA class members who suffered a non-willful violation that accrued more than two years ago, or a willful violation that accrued more than three years ago, would find their claim already time-barred, unless preserved by some other form of equitable tolling.  *See Partlow v. Lewis Orphans' Home, Inc.*, 645 F.2d 757, 760 (9th Cir. 1981), *abrogated on other grounds by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989).  Any putative FLSA class members who may still have an active claim are at immediate risk of having that claim time-barred if they do not soon receive notice.  That risk of prejudice is heightened because the continuing violations tolling doctrine does not apply to FLSA claims.  *See Dent*, 502 F.3d at 1144 (citing *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1113 (9th Cir. 2006)).  Because the failure to provide notice might result in permanent prejudice, the Court finds that this factor weighs decidedly in favor of providing future putative FLSA class notice.[8]

---

[7] At the hearing, Plaintiffs' counsel represented (for the first time) that there has been no publicity about the case.  Under the circumstances, the Court does not view this representation as dispositive of the issue, especially since it was not submitted in a declaration or otherwise substantiated for evidentiary purposes.  *Cf. Luo*, 2014 WL 457742, at *4 (counsel submitted declaration attesting to improbability of publicity).

[8] The settling parties indirectly suggest that Experis would remain liable for the nationwide FLSA claims and that, therefore, there is no risk of prejudice.  Mot. at 6 ("[T]he Settling Parties agree that the amount offered in settlement, especially in light of the Prior Payments and Plaintiffs' retention of their claims against Experis, represents a fair and equitable resolution of the Settling Parties' disputes.").  The Court does not believe this is a sufficient reason to preclude putative

With regard to Plaintiffs' California statutory wage-and-hour causes of action, the statute of limitations is three years. Cal. Code Civ. P. § 338(a); *see also* Compl. at 49-64. Unlike FLSA claims, those state-law claims have been subject to equitable tolling since the date this putative class action complaint was filed. *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 559 (1974). For that reason, there is a substantially diminished risk of prejudice to those putative class claims: putative class members could have years to file a new complaint. Accordingly, the Court finds that this factor weighs against the need to provide notice regarding these state-law claims.[9]

The third and final factor the Court considers is whether the "settlement or concession of class interests made by the class representative or counsel [was done] in order to further their own interests." 876 F.2d at 1408; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (danger of collusion is heightened where putative class counsel and the defendant reach a settlement before the plaintiff moves for class certification). On this account, there is some indirect evidence that at least raises the possibility that named Plaintiffs and their counsel have put their own interests ahead of the interests of the putative class. *See Staton v. Boeing Co.*, 327 F.3d 938, 958 & n.12 (9th Cir. 2003) ("Even when there is no direct proof of explicit collusion, there is always the possibility in class action settlements that the defendant, class counsel, and class representatives will all pursue their own interests at the expense of the class."). The Court does not raise these concerns lightly, but the settling parties have had multiple chances to explain in detail why and how this settlement came about. They have failed to do so.

As an initial matter, TIAA and Pride have a vested interest in securing the dismissal of Plaintiffs' FLSA class claims, even without prejudice, because the clock is continuing to run on those putative class members' claims. For that reason, TIAA and Pride have a strong incentive to heavily compensate, if not overcompensate, the named Plaintiffs to secure their voluntary dismissal of the FLSA class claims before notice is given. And there is no dispute between the

---

class notice because, in any event, putative class members are at risk of losing their claims against TIAA and Pride.

[9] Even though the Court finds there is a diminished risk of prejudice to the putative California class regarding their state-law wage-and-hour causes of action, the fact that the Court finds any future FLSA settlement approval would be conditioned on putative FLSA class notice effectively guarantees indirect notice of the state-law wage-and-hour claims as well.

11

settling parties that the total payments to three Plaintiffs are well in excess of actual damages. The settling parties justify the amount of the additional settlement payments to these Plaintiffs by stating that, "[i]n concept . . . [they] would have an effect similar to an award of liquidated damages and attorneys' fees under the FLSA." *Id.* But reasonable fees and costs are mandatory under the FLSA and would be separately recovered in any case. *See* 29 U.S.C. § 216(b) (FLSA mandates reasonable fees and costs). And while the Court recognizes that the FLSA authorizes the payment of liquidated damages, 29 U.S.C. §216(b), the Ninth Circuit has long recognized the existence of a good faith defense, *Local 246 Utility Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 297-98 (9th Cir. 1996). Given the potential availability of a complete defense to liquidated damages, the amount being paid to Plaintiffs at this stage of the litigation is noteworthy in light of the past payments supposedly reflecting actual damages. Based on the Court's own research, it does not appear common for a defendant in this district to offer to pay *any* liquidated damages as part of a proposed FLSA settlement agreement. *See, e.g.*, *Otey I*, 2014 WL 1477630, at *6 (the defendant offered to pay 50% of unpaid FLSA wages); *Lee v. Timberland Co.*, No. 07-cv-2367, 2008 WL 2492295, at *2 (N.D. Cal. Jun. 19, 2008) (offer for 70% of unpaid FLSA wages).

Against that backdrop, the settling parties admit that they simultaneously negotiated Plaintiffs' settlement payments and attorneys' fees. Specifically, their moving papers state: "In calculating the amount to be paid to Plaintiffs pursuant to the Settlement Agreement, all parties agreed to an amount equivalent to the Prior Payments, plus an additional 20% for attorneys' fees[.]" Mot. at 4-5. That kind of negotiation raises the specter of collusion because it suggests that Plaintiffs' counsel may have been motivated to undercut their clients' (and the putative class's) recovery in order to quickly generate higher attorneys' fees for themselves. *See* 2 McLaughlin on Class Actions § 6.4 (12th ed. revised 2015) ("Courts also have identified a special danger of collusiveness when the attorney fees, ostensibly stemming from a separate agreement, were negotiated simultaneously with the settlement.") (internal citation and quotation omitted).

Even if that fact alone were not sufficient to generate an inference of potentially self-interested action, Plaintiffs' counsel's motion for attorneys' fees and costs would be. There,

1   Plaintiffs' counsel claim they are entitled to recover nearly double the percentage of their clients'

2   settlements for which they apparently negotiated with TIAA and Pride, based on contingency fee

3   agreements.  Fees Mot. at 1 ("Plaintiffs entered into a contingency fee agreement with counsel,

4   entitling Plaintiffs' counsel to 35% of Plaintiffs' total recovery, plus expenses."); *see also id.* at 1

5   & n.2 ("While it is not clear, via controlling authority that approval of a contingency fee to be paid

6   in settlement of individual FLSA claims is necessary, Plaintiffs file this Motion out of an

7   abundance of caution.").  The Court does not understand how Plaintiffs' counsel could negotiate a

8   20% premium for their fees with TIAA and Pride, then turn to the Court and request 35% of their

9   clients' settlement payments on the basis of previously undisclosed retainer agreements.[10]

10   Additionally, the Court finds it significant that Plaintiffs' counsel never moved for

11   conditional certification of the FLSA class to provide notice to putative class members and allow

12   them to preserve their claims.  That is a standard procedure in FLSA collective actions.  *See, e.g.*,

13   *Labrie v. UPS Supply Chain Sols., Inc.*, No. C 08-3182, 2009 WL 723599 (N.D. Cal. Mar. 18,

14   2009).  The Court finds this especially odd given that Plaintiffs' FLSA class claims against

15   Experis would have survived this joint settlement agreement even if the settlement had been

16   approved.  Yet, during the months since the original global settlement agreement fell apart,

17   Plaintiffs' counsel apparently has done nothing to alert the putative class about the potential

18   prejudice to their claims against Experis.

19   In sum, there is at least the appearance that Plaintiffs' counsel may be focused on

20   maximizing its own recovery from settling the named Plaintiffs' claims without considering the

21   prejudicial effect that its tactics might have for putative class members.  Considering the risk of

---

[10] At the hearing, Plaintiffs' counsel tried to explain away the settling parties' earlier representation in their joint motion that they had negotiated a 20% premium on top of the settlement payments to be reserved for attorneys' fees.  The Court reviewed the settlement amount calculations and has determined that the numbers reflect that the settling parties did in fact negotiate a 20% premium for attorneys' fees.  In the joint motion, the settling parties explain that they calculated the current payments by taking the previous payments and adding a 20% increase for fees.  Mot. at 4-5 ("In calculating the amount to be paid to Plaintiffs pursuant to the Settlement Agreement, all parties agreed to an amount equivalent to the Prior Payments, plus an additional 20% for attorneys' fees[.]").  When Experis dropped out of the global settlement agreement, the settling parties reduced each current payment *pro rata* by the percentage that Experis was contributing to the global settlement.  *Id.* at 5.  Based on this analysis, counsel's statement to the contrary is yet another mysterious aspect of this strange proposed settlement.

13

1  prejudice to the putative class from operation of the statute of limitations with regard to the FLSA
2  claims, and the existence of some evidence of self-interested conduct by the named plaintiffs and
3  their counsel, the Court would condition any future approval of a FLSA settlement on putative
4  class notice.  *See Diaz*, 876 F.2d at 1408-11.

### B. Plaintiffs' Motion for Attorneys' Fees

Because the Court denies settlement approval, Plaintiffs' motion for attorneys' fees is also necessarily denied.  In the event that the settling parties later successfully move for settlement approval and provide notice to the putative class, the Court will, as it must, award reasonable attorneys' fees to Plaintiffs' counsel.  *See* 29 U.S.C. § 216(b); *Dent*, 502 F.3d at 1143.  The Court retains the authority to determine what fees are reasonable.  *See Avila v. Los Angeles Police Dept.*, 758 F.3d 1096, 1105 (9th Cir 2014) (reviewing reasonableness of reduced award for abuse of discretion).  The Court also reserves judgment on whether costs are included in the settlement agreements.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Plaintiffs, TIAA, and Pride's renewed joint motion for settlement approval and **DENIES** Plaintiffs' motion for attorneys' fees. Any subsequent attempt to abandon class claims must include a proposed plan for giving notice to the putative class.  As noted above, Plaintiffs are **ORDERED** to file their third-amended complaint, as approved by the Court, as a separate docket entry within five days of this Order. Additionally, the Court sets a further case management conference for February 2, 2016, at 2:00 p.m., to discuss setting a schedule for the rest of this case.

**IT IS SO ORDERED.**

Dated: January 13, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge